**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| David Turner, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>Schneider Electric Holdings,<br>Inc., et al., )<br><br>Defendants. ) | Civil Action No.<br>20-11006-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiffs are seven current and former employees of Schneider Electric Holdings, Inc. ("Schneider Electric") who are participants in the Schneider Electric 401(k) Plan ("the Plan"). They filed the instant action on behalf of the Plan against Schneider Electric, the two committees that oversee the Plan (collectively with Schneider Electric, "Schneider") and Aon Hewitt Investment Consulting, Inc. ("AHIC"), the Plan's investment manager (collectively, "defendants").

In their complaint, plaintiffs bring a variety of claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., arising out of alleged

improper investment decisions which resulted in losses to participants' retirement savings and excessive administrative fees.  Pending before the Court are the motions of Schneider and AHIC to dismiss plaintiffs' complaint.[1]

I.   **Factual Background**

Schneider Electric is a North American subsidiary of a multinational energy technology company.  It maintains the Plan as part of its employee benefits package, whereby its workers may contribute toward their retirement.  The Plan is now worth over $3.7 billion, making it one of the largest defined contribution plans in the country.  The Schneider Electric Holdings, Inc. Benefits Committee ("Benefits Committee") operates and administers the Plan, while the Schneider Electric Holdings, Inc. Investment Committee ("Investment Committee") manages the assets.

Since the inception of the Plan in 2010, Schneider has contracted with Vanguard Group, Inc. ("Vanguard") to provide recordkeeping and managed account services.  Schneider also retained AHIC to provide investment consulting services on behalf of the Plan until January, 2016, at which point AHIC

---

[1] Plaintiffs filed an "Amended Complaint" in September, 2020 (Docket No. 45) but that is simply an unredacted version of the original complaint filed in May, 2020 (Docket No. 1).

became the Plan's discretionary investment manager.  In its new role, AHIC was permitted to select and divest of Plan investments but Schneider retained the right to select additional investment options not recommended or administered by AHIC.

In February, 2017, AHIC replaced several existing Plan investment options, namely Vanguard target date funds, with its own collective investment trusts.  Those trusts included the Aon Hewitt Index Retirement Solution passively-managed target date funds ("the Aon target date funds") as well as the actively-managed Aon Hewitt Growth, Income and Inflation Strategy Funds ("the Aon actively-managed funds") (collectively, "the Aon Trusts").  In October, 2017, Schneider exercised its right to add additional investment options to the Plan by including five new Vanguard index funds.

Plaintiffs allege that the defendants replaced well-performing funds with the Aon Trusts for their own financial gain rather than to benefit Plan participants.  According to plaintiffs, investments in the Aon Trusts have cost the Plan participants millions of dollars in retirement savings.

II.  **Procedural Background**

Plaintiffs filed suit in this Court on May 26, 2020.  They seek to represent a putative class of all participants and beneficiaries of the Plan since May 26, 2014, and to recover all losses to the Plan resulting from defendants' purported breaches of their fiduciary duties.

In their complaint, plaintiffs claim that defendants breached their fiduciary duties and violated ERISA's prohibition of certain transactions by causing the Plan to invest in proprietary Aon Hewitt collective investment trusts (Counts I, VI and VII).  Plaintiffs also contend that Schneider, specifically, failed to monitor the Plan's other fiduciaries (Count V) and caused the Plan to pay unreasonable investment management fees (Count II), recordkeeping fees (Count III), and managed account fees (Count IV).

Schneider and AHIC filed separate motions to dismiss plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6) in August, 2020, which plaintiffs timely opposed.

III. **Motions to Dismiss**

Although several counts are asserted against Schneider and AHIC together, defendants have filed separate motions to dismiss.  In the interest of brevity and efficiency, to the

-4-

extent the parties' arguments overlap, they will be addressed together.

### A.    Legal Standard

To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may only look to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 228 F.3d 1127 (1st Cir. 2000).  Here, that includes the Investment Management Agreement ("IMA") between Schneider and AHIC, which is referenced in the complaint and central to plaintiffs' claims.

Furthermore, the Court must accept all factual allegations in the claim as true and draw all reasonable inferences in the claimant's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the claim are sufficient to state a cause of action, a motion to dismiss must be denied. See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all the factual allegations in a claim, that doctrine is not applicable to legal conclusions. <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662 (2009).  Threadbare recitals of legal elements which are supported by mere conclusory statements do not suffice to state a cause of action. <u>Id.</u>

**B.   Count I – Breach of fiduciary duties arising from the selection of the Aon Trusts**

Plaintiffs allege that defendants breached their fiduciary duties of loyalty and prudence by removing Vanguard funds from the Plan's investments and replacing them with Aon funds that had insufficient or nonexistent performance histories. Defendants respond that Count I fails to state a claim that they breached either duty.

**1.   Duty of prudence**

ERISA establishes a duty of prudence, requiring that a fiduciary act

> with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(B).  When examining an alleged breach of the duty of prudence the key question is "whether the fiduciary took into account all relevant information" in performing its

-6-

duties under ERISA. Moitoso v. FMR LLC, 451 F. Supp. 3d 189, 204 (D. Mass. 2020) (internal citations and quotation marks omitted).  Although there is no specific set of factors that fiduciaries must evaluate when considering investments, the duty of prudence requires them to "employ appropriate methods to investigate the merits of the investment." Id. at 204-05. Furthermore, that duty "involves a continuing duty to monitor investments and remove imprudent ones." Tibble v. Edison Int'l, 135 S. Ct. 1823, 1829 (2015).

Defendants correctly state that plaintiffs cannot support their claim of imprudence by retroactively comparing the performance of the Aon Trusts to other funds.  The test of prudence "is one of process rather than ultimate investment performance and cannot be measured in hindsight." Velazquez v. Mass. Fin. Servs. Co., 320 F. Supp. 3d 252, 259 (D. Mass. 2018) (citing Bunch v. W.R. Grace & Co., 555 F.3d 1, 7 (1st Cir. 2009)).  The Court likewise concurs with defendants that performance comparisons between funds that differ in investment strategy and asset allocation are particularly unavailing. See Davis v. Washington University in St. Louis, 960 F.3d 478, 486 (8th Cir. 2020) (comparing funds with different strategies does not demonstrate imprudence).

Nevertheless, even if a plaintiff does not "directly address" the process by which a plan is managed,

> a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed.

Moreno v. Deutsche Bank Ams. Holding Corp., No. 15 Civ. 9936, 2016 U.S. Dist. LEXIS 142601, at *16-17 (S.D.N.Y. Oct. 13, 2016); see also Sweda v. Univ. of Pa., 923 F.3d 320, 332 (3d Cir. 2019).

Here, the duty of prudence claim does not rest solely on the performance of the Aon Trusts in hindsight.  Instead, plaintiffs assert that the selection of the Aon Trusts was imprudent because, at the time they were selected, the funds had insufficient performance histories upon which they could be evaluated.  Plaintiffs declare that a prudent fiduciary would not have selected investment options that completely lack performance histories, such as the Aon target date funds, especially when the Vanguard funds they replaced produced "consistent and strong performance" and charged far lower fees.

Plaintiffs note moreover that the funds chosen were AHIC's proprietary funds and suggest that the process by which AHIC selected investments for the Plan was tarnished by a desire to promote its new funds and to benefit itself.  Such allegations

-8-

sufficiently state a claim for breach of the duty of prudence.
See Pledger v. Reliance Trust Co., 240 F. Supp. 3d 1314, 1326-27
(N.D. Ga. 2017) ("[A]n allegation that a fiduciary chose
investment options with poor performance histories as opposed to
other better performing alternatives states a claim for
fiduciary breach when there is also an allegation that the
choice benefitted one or more corporate or fiduciary interests
over those of the plan"); Krueger v. Ameriprise Fin., Inc., No.
11-cv-02781, 2012 U.S. Dist. LEXIS 166191, at *28-31 (D. Minn.
Nov. 20, 2012).

Defendants protest that, with respect to the assertion that
they were imprudent to purchase the purportedly higher priced
Aon Trusts, "nothing in ERISA requires every fiduciary to scour
the market to find and offer the cheapest possible fund." Hecker
v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009).  Even so,
"cost-conscious management is fundamental to prudence in the
investment function." Tibble, 843 F.3d at 1197-98 (quoting
Restatement (Third) Of Trusts § 90, cmt. b).  Courts have found
that plaintiffs stated a claim for breach of fiduciary duty
where the chosen investments were more expensive than other
available funds. See, e.g., Moreno, 2016 U.S. Dist. LEXIS
142601, at *17-18(denying motion to dismiss as to breach of
fiduciary duty where the complaint alleged that "proprietary

-9-

index funds offered by the Plan charged fees that were excessive compared with similar investment products offered by Vanguard").

Accepting the allegations in the complaint as true, plaintiffs raise "a plausible inference that the process for selecting or monitoring the [Aon Trusts] was deficient." Reetz v. Lowe's Cos., No. 5:18-CV-00075, 2019 U.S. Dist. LEXIS 151794, at *17 (W.D.N.C. Sept. 5, 2019). Accordingly, defendants' motions with respect to plaintiffs' claim for breach of the duty of prudence in Count I will be denied.

### 2. Duty of loyalty

ERISA also establishes a duty of loyalty, requiring that a fiduciary

> discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of: providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan.

29 U.S.C. § 1104(a)(1)(A). Plaintiffs who claim disloyalty must show that defendants failed to act in the best interests of plan participants and

> [i]t is not enough for a plaintiff to identify a potential conflict of interest from the defendant's investment in its own proprietary funds.

-10-

Moitoso v. FMR LLC, 451 F. Supp. 3d 189, 204 (D. Mass. 2020).
Instead, plaintiffs must demonstrate that "the fiduciary's
subjective motivation" was improper. Id.

Plaintiffs' theory that Schneider allowed the Plan to
invest in the Aon Trusts in exchange for reduced fees for its
other corporate benefit plans is entirely speculative.  The only
factual allegation in support of that theory is that the fees
charged to Schneider by AHIC declined following the addition of
the Aon Trusts to the Plan's investment lineup in 2017.  As
Schneider points out in its opposition, however, "mere
coincidence in timing is not evidence of causation."
Furthermore, as AHIC emphasizes, plaintiffs fail to allege that
AHIC offered more favorable rates for the services provided to
Schneider's corporate plans but instead claim only that the
total amount that Schneider paid decreased.  Plaintiffs'
allegations as to the "long-standing business relationship"
between Schneider and AHIC do not rise above speculation and
merely raise the "sheer possibility" that Schneider acted
unlawfully, which is insufficient to state a claim. Iqbal, 556
U.S. at 678.

With respect to AHIC, however, plaintiffs plausibly allege
that it breached its duty of loyalty by selecting its own funds

for the Plan's investment lineup.  Although the IMA between AHIC
and Schneider indicates that AHIC did not earn additional
compensation by investing in the proprietary funds, AHIC
concedes that its banking affiliate Aon Trust Company LLC
("ATC") was paid a trustee fee after the addition of the Aon
Trusts to the Plan's investments.  Aside from direct monetary
gain, plaintiffs also allege that AHIC received indirect
benefits from the use of Plan assets to promote its new
investment products and to increase its investment management
business.

AHIC insists that plaintiffs fail to demonstrate that its
primary motive was corporate financial gain and, in any event, a
fiduciary is not prohibited from taking actions that
incidentally benefit the fiduciary.  Nevertheless, the complaint
contains a multitude of allegations asserting that the
investment of Plan assets in the Aon Trusts was imprudent
resulting in financial gain to AHIC and financial loss to Plan
participants.  Taken together, such allegations raise a
plausible inference that AHIC had an improper motive and failed
to act "solely in the interest of" the Plan's participants in
violation of § 1104(a)(1).

Accordingly, the disloyalty claim in Count I will be dismissed as to Schneider but not as to AHIC.

**C.    Count II – Breach of fiduciary duties arising from unreasonable investment management fees**

Plaintiffs next allege that Schneider breached its fiduciary duties of loyalty and prudence when it selected and retained higher-cost share classes of funds with excessive investment management fees instead of identical, lower-cost share classes of the same funds.  According to plaintiffs, the decision to offer higher-cost shares purportedly caused participants in the Plan to incur substantial losses of retirement savings.

With respect to the claim of imprudence, this session has previously held that an allegation that plan fiduciaries failed to obtain identical lower-cost investment options is sufficient to state a cause of action at the pleading stage. See Tracey v. MIT, No. 16-11620-NMG, 2017 U.S. Dist. LEXIS 165070, at *6-7 (D. Mass. Oct. 4, 2017) (where similar alleged conduct was found to be, if proved, wanting of the 'care, skill and prudence' required by ERISA).  Therefore, the duty of prudence claim in Count II may proceed.

Dismissal of plaintiffs' disloyalty claim is, however, again appropriate.  Even after drawing all reasonable inferences

in favor of plaintiffs, the complaint is devoid of plausible allegations that Schneider intended to benefit itself or AHIC through the selection of higher-cost shares.  Although plaintiffs aver that Schneider allowed AHIC to invest Plan assets in its proprietary funds in exchange for reduced fees, the Court has already concluded that such allegations are insufficient to state a claim of disloyalty.  Without specific factual allegations regarding Schneider's self-serving motive, plaintiffs do not state a cause of action for breach of the duty of loyalty. See Sacerdote v. New York Univ., No. 16-CV-6284 (KBF), 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017) ("[T]o implicate the concept of 'loyalty,' a plaintiff must allege plausible facts supporting an inference that the defendant acted for the purpose of providing benefits to itself or someone else.").

Accordingly, plaintiffs have stated a plausible claim of a breach of the duty of prudence, but not the duty of loyalty, in Count II.

> **D. Counts III and IV – Breach of fiduciary duties arising from excessive recordkeeping and managed account fees**

In Counts III and IV, plaintiffs allege that Schneider breached its fiduciary duties by causing the Plan to incur

unreasonably large fees for Vanguard's recordkeeping and managed account services.

### 1.   Duty of loyalty

Schneider first asserts that the duty of loyalty claim in Count III should be dismissed because plaintiffs have pled no facts indicating that the Plan's fiduciaries were motivated by anything other than the best interests of the participants in dealing with Vanguard.

The Court concludes that plaintiffs have not adequately pled a breach of the duty of loyalty with respect to administrative expenses.  To state such a claim, plaintiffs were obliged to allege that Schneider acted "based on anything other than the best interest of the Plan participants" or that Schneider's "operative motive was to further its own interests" in negotiating Vanguard's fees. Ramos v. Banner Health, 461 F. Supp. 3d 1067, 1125 (D. Colo. 2020) (internal citations omitted); see also Sacerdote, 2017 WL 3701482, at *5.  The complaint contains no such allegations.  Rather, the duty of loyalty claim "hinge[s] entirely on the prudence-based allegations." Terraza v. Safeway Inc., 241 F. Supp. 3d 1057, 1070 (N.D. Cal. 2017) (internal citation omitted).

Therefore, the duty of loyalty claims in Counts III and IV will be dismissed.

### 2.    Duty of prudence

Fiduciaries have a general duty to monitor recordkeeping expenses and, more generally, they have a prudential duty to be cost-conscious in the administration of a plan. Moitoso v. FMR LLC, 451 F. Supp. 3d 189, 213 (D. Mass. 2020); Tibble v. Edison Int'l, 843 F.3d 1187, 1197-98 (9th Cir. 2016).  ERISA fiduciaries breach their duty of prudence "by failing diligently to investigate and monitor recordkeeping expenses" as well as other administrative expenses. Moitoso, 451 F. Supp. 3d at 213; Ramos v. Banner Health, 461 F. Supp. 3d 1067, 1132 (D. Colo. 2020) ("[I]t is incumbent on the fiduciary to engage in a process that results in a strong understanding of the amount of recordkeeping and administrative fees paid, the services provide[d] for that payment, and how that pricing relates to the market.").

With respect to Count III, the participants allege that Schneider acted imprudently by failing to conduct a competitive bidding process for the Plan's recordkeeping services, causing the Plan to pay unreasonable fees.  They also assert that Schneider did not leverage the Plan's size to negotiate lower

fees and failed to monitor Vanguard's compensation.  Such allegations are sufficient to state a claim that Schneider breached its duty of prudence regarding Vanguard's recordkeeping fees. See, e.g., Sweda v. Univ. of Pa., 923 F.3d 320, 331-32 (3d Cir. 2019) (concluding that identical allegations stated a claim for a breach of fiduciary duty).

Schneider insists that ERISA does not require a fiduciary to solicit competitive bids but this session has already rejected that contention. See Tracey, 2017 U.S. Dist. LEXIS 165070, at *8 ("As part of the 'prudent man standard' one would expect a fiduciary to obtain bids at some point[.]").  Schneider further protests that plaintiffs do not, in fact, allege a failure to conduct competitive bidding.  The complaint clearly states, however, that Schneider caused the Plan to incur unreasonable fees "[b]y failing to . . . obtain competitive bids for the Plan's recordkeeping services."

As to Count IV, plaintiffs similarly state a claim that Schneider breached its duty of prudence.  They allege that Schneider did not solicit competitive bids for managed account services and subsequently failed to monitor and control the fees for such services.  As noted above, such allegations adequately state a claim for a breach of fiduciary duty. See, e.g., Sweda,

-17-

923 F.3d at 331-32.  Plaintiffs also aver that the Plan's managed account fees were unreasonably high for the services rendered and proffer specific comparisons to cheaper services "at least equal to the quality of Vanguard's services," bolstering the adequacy of the allegations in Count IV. See Ramos, 461 F. Supp. 3d at 1132 ("A high fee alone does not mandate a conclusion that recordkeeping fees are excessive; rather, fees must be evaluated relative to the services rendered.") (internal quotation marks and citation omitted).

Accordingly, dismissal of the duty of prudence claims in Counts III and IV is unwarranted.

**E.   Count V - Failure to monitor fiduciaries**

In Count V, plaintiffs allege that Schneider failed to monitor the other fiduciaries of the Plan in accordance with ERISA's fiduciary standards.

The duty to monitor claim is a derivative of plaintiffs' other fiduciary duty claims. See Velazquez v. Mass. Fin. Servs. Co., 320 F. Supp. 3d 252, 260 (D. Mass. 2018).  To the extent plaintiffs have plausibly alleged that defendants breached their fiduciary duties directly, plaintiffs have also plausibly alleged that defendants have breached their duty to monitor.

Because plaintiffs have sufficiently pled a breach of Schneider's duty of prudence in Counts I, II, III and IV, Count V may proceed with respect to those claims.

**F.   Counts VI and VII – Prohibited transactions**

**1.   Against Schneider (Count VI)**

In Count VI, plaintiffs contend that Schneider violated ERISA's ban on certain transactions under 29 U.S.C. § 1106(a)(1)(A), (C) and (D) by using Plan assets to compensate AHIC and promote the Aon Trusts.

Schneider first submits that it cannot be held liable under § 1106(a)(1) for using Plan assets to compensate AHIC because AHIC was not a "party in interest" when it was hired as the Plan's investment manager.

The prohibited transactions under § 1106(a)(1)(A)-(D) "necessarily involve two parties: the fiduciary and the party in interest." Reich v. Stangl, 73 F.3d 1027, 1031 (10th Cir. 1996); see also Sellers v. Anthem Life Ins. Co., 316 F. Supp. 3d 25, 34 (D.D.C. 2018) (Section 1106(A)-(D) prohibits such transactions only with respect to "a party in interest"). ERISA defines a "party in interest" as, inter alia, "a person providing services to [a] plan." 29 U.S.C. § 1002(14)(A)-(B).

-19-

Schneider claims that it would be "absurd" to hold a Plan's fiduciary responsible for "negotiat[ing] with an existing service provider to expand the relationship."  Although ERISA does not proscribe a plan from paying an unrelated party for services, the statute does prohibit service relationships with persons who are "parties in interest" by virtue of some other relationship. Sellers v. Anthem Life Ins. Co., 316 F. Supp. 3d 25, 34 (D.D.C. 2018).  The allegations in the complaint demonstrate that AHIC was not an "unrelated party" because, according to plaintiffs, it had provided consulting services to the Plan for several years prior to becoming the Plan's investment manager.  Therefore, plaintiffs plausibly allege that AHIC provided services to the Plan and was, in fact, a party in interest for the purposes of § 1106(a)(1).

Schneider next asserts that the decision to invest Plan assets in the Aon Trusts is exempt from the ERISA ban on prohibited transactions under 29 U.S.C. § 1108(b)(8).

Section 1108(b) enumerates several transactions exempted from the prohibitions of § 1106.  One subsection, which Schneider contends is relevant here, exempts any transaction between a plan and a collective trust fund maintained by a bank or trust company if

(A) the transaction is a sale or purchase of an interest in the fund,

(B) the bank, trust company, or insurance company receives not more than reasonable compensation, and

(C) such transaction is expressly permitted by the instrument under which the plan is maintained, or by a fiduciary (other than the bank, trust company, or insurance company[,] or an affiliate thereof) who has authority to manage and control the assets of the plan.

29 U.S.C. § 1108(b)(8).

Plaintiffs first submit that the exemptions in § 1108 are affirmative defenses which they are not required to refute at the pleading stage. See, e.g., Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 600-01 (8th Cir. 2009).  In the First Circuit, however, "an affirmative defense may serve as a basis for dismissal under Rule 12(b)(6)." U.S. ex rel. Winkelman v. CVS Caremark Corp., 827 F.3d 201, 207 (1st Cir. 2016).  Although defendants must ultimately prove the exemption in § 1108(b)(8), plaintiffs "must plead something to show why the exemption would not apply." Velazquez, 320 F. Supp. 3d at 260; see also Bekker v. Neuberger Berman Grp. LLC, No. 16 CV 6123-LTS-BCM, 2018 U.S. Dist. LEXIS 166690, at *22 (S.D.N.Y. Sept. 27, 2018) ("Although Plaintiff has no duty to negate the availability of the section 408(b)(8) affirmative defense, the Court must still consider whether the facts alleged in the Complaint plainly establish the exemption's applicability.").

Here, plaintiffs allege that the Aon Trusts in which the Plan invested were "collective investment trusts" maintained by ATC, a "non-depository bank."  They also aver that the investment of Plan assets in the Aon Trusts is permitted by Schneider as a fiduciary of the Plan other than ATC.  Finally, although plaintiffs argue that the Plan could have obtained shares from a lower-cost share class, they have not pled any facts suggesting that ATC received more than "reasonable compensation" for the shares it did obtain for the Plan. Therefore, the complaint does not allege that Schneider's conduct fell outside a statutory exemption. Leber v. Citigroup, Inc., No. 07 Civ. 9329, 2010 U.S. Dist. LEXIS 25097, at *27 (S.D.N.Y. Mar. 16, 2010).

Plaintiffs also contend that the § 1108(b)(8) exemption is inapplicable as a matter of law because the purpose of that exemption is to allow a financial management company to invest the assets of its plan in its own investment funds.  As a result, § 1108(b)(8) purportedly does not authorize a third party fiduciary such as AHIC to invest the assets of its client's plan in its own funds.  This session has, however, found § 1108(b)(8) applicable in a similar case in which a plan sponsor allegedly caused the plan to invest in funds affiliated not with the plan's sponsor but with the plan's trustee. See

-22-

Tracey v. Mass. Inst. of Tech., 404 F. Supp. 3d 356, 363-64 (D. Mass. 2019).  Plaintiffs have cited no authority to demonstrate that § 1108(b)(8) proscribes the transaction at issue here, nor have they attempted to rebut Schneider's claim of compliance with that statutory provision.

Accordingly, the Court will dismiss Count VI with respect to Schneider.

### 2.   Against AHIC (Counts VI and VII)

Finally, plaintiffs allege, as they did against Schneider, that AHIC violated ERISA's ban on certain transactions.  In Count VI, they assert that AHIC is liable under 29 U.S.C. § 1106(a) for using Plan assets to compensate itself and fund the Aon Trusts.  In Count VII, plaintiffs contend that AHIC is also liable under 29 U.S.C. § 1106(b) for that same conduct.

### a. Use of Plan assets to hire AHIC

AHIC first asserts that Counts VI and VII should be dismissed insofar as they allege liability for causing the Plan to expend Plan assets to AHIC because AHIC was not the fiduciary responsible for approving that expenditure.

The terms of § 1106 make it clear that only fiduciaries are prohibited from engaging in the listed transactions. See generally 29 U.S.C. § 1106(a)-(b).  A party's status as a

fiduciary "is not an all or nothing proposition" but rather depends upon the actions that the party undertakes relating to the administration and management of an ERISA plan. In re Fid. Erisa Fee Litig., No. CV 19-10335-LTS, 2020 WL 759542, at *5 (D. Mass. Feb. 14, 2020) (quoting Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 18 (1st Cir. 1998)).

It is well-established that a service provider to an ERISA plan does not act as a fiduciary when negotiating its own fees with that plan. See, e.g., Santomenno v. Transamerica Life Ins. Co., 883 F.3d 833, 838 (9th Cir. 2018) ("A service provider is plainly not involved in plan management when negotiating its prospective fees."); Renfro v. Unisys Corp., 671 F.3d 314, 324 (3d Cir. 2011) (service provider "owes no fiduciary duty with respect to the negotiation of its fee compensation"); Hecker, 556 F.3d at 583 ("[A] service provider does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms.").

Here, the complaint indicates that AHIC was not acting as a fiduciary when negotiating compensation for the services it provided to the Plan, which were ultimately approved by Schneider as the Plan's fiduciary.  Consequently, it cannot be

held liable under § 1106 for the disbursement of Plan assets for that purpose.

### b. Investing in the Aon Trusts

AHIC next maintains that the remaining allegations against it in Counts VI and VII, namely that it improperly caused the Plan to invest in the Aon Trusts, should be dismissed because that investment decision and the resulting payments are permitted under 29 U.S.C. § 1108.

This Court has already concluded that § 1108(b)(8) applies to the Plan's investments in the Aon Trusts and that plaintiffs have not alleged facts sufficient to negate that exemption.  The only argument not yet explored is plaintiffs' claim that there are no exceptions to the conduct prohibited by § 1106(b).

Plaintiffs cite several cases for the proposition that § 1106(b) "admits of no exceptions." Nat'l Sec. Systems v. Iola, 700 F.3d 65, 94 (3d Cir. 2012); see also Barboza v. Cal. Assn. of Prof'l Firefighters, 799 F.3d 1257, 1269-70 & n.5 (9th Cir. 2015).  Those cases, however, dealt with exemptions in § 1108(b)(2) and (c)(2), specifically, which the Department of Labor ("DOL") has indicated are inapplicable to § 1106(b). See 29 C.F.R. § 2550.408b-2.  In contrast, the DOL and several other courts have determined that § 1108(b)(8) does, in fact, apply to

§ 1106(b).  <u>See, e.g.</u>, DOL Adv. Op. No. 96-15A, 1996 WL 453859, at *3 n.3 (Aug. 7, 1996); <u>Feinberg</u> v. <u>T. Rowe Price Grp., Inc.</u>, 2021 U.S. Dist. LEXIS 26549, at *40 (D. Md. Fed. 9, 2021); <u>Patterson</u> v. <u>Stanley</u>, 2019 U.S. Dist. LEXIS 174832, at *25 (S.D.N.Y. Oct. 7, 2019).  Therefore, § 1108(b)(8) exempts conduct that would otherwise violate either § 1106(a) or (b).

Because this Court has concluded that plaintiffs have not alleged facts to foreclose the applicability of § 1108(b)(8) to the complained-of conduct, that exemption bars liability under § 1106(b) as well as under § 1106(a).  Accordingly, Counts VI and VII fail to state claims against AHIC.

**ORDER**

For the foregoing reasons,

(a)  the motion of Schneider Electric Holdings, Inc. to dismiss plaintiffs' complaint (Docket No. 34) is, with respect to Count V and the imprudence claims in Counts I-IV, **DENIED**, but otherwise, **ALLOWED**; and

(b)  the motion of Aon Hewitt Investment Consulting Inc. to dismiss plaintiffs' complaint (Docket No. 36) is, with respect to Count I, **DENIED**, but otherwise, **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated March 26, 2021